**LIOTTA v. MELLON, Secretary of the Treasury, et al.**

No. 4843.

District Court, E. D. New York.

July 11, 1930.

Harry S. Hall, of New York City, for plaintiff.

Howard W. Ameli, U. S. Atty., of Brooklyn, N. Y. (Herbert H. Kellogg and Geo. H. Bragdon, Asst. U. S. Attys., both of Brooklyn, N. Y., and John E. O'Neill, Senior Counsel, Treasury Department, of New York City, of counsel), for defendants.

BYERS, District Judge.

This is a proceeding in equity to review the revocation, by the Prohibition Administrator for this district, of plaintiff's permit SDA–2–466 to withdraw 1,000 wine gallons of specially denatured alcohol during every thirty-day period in 1929.

The permit history is as follows:

Prior to October 1, 1927, the plaintiff operated under a basic permit, issued in 1923, containing no specified date of expiration. Presumably the Administrator notified the permittee that, in accordance with the terms of the October, 1927, regulations, the basic permit would expire December 31, 1928. Hence, in the latter month, application was made and granted for a so-called renewal permit for the year 1929.

That was not apparently accompanied by any overt acts such as have been construed in some opinions to constitute a surrender of the 1923 permit. The decision herein made does not rest on the theory that there was such a surrender.

The 1929 permit bore the number above stated, and was revoked as of May 29, 1929, in the proceeding now under review. An application was made for a 1930 permit, which was denied March 19, 1930, because of the revocation of the 1929 permit.

Argument is made that, the latter permit having expired, by its terms, prior to the institution of this litigation, the question of the soundness of the Administrator's

conclusion is academic, and the proceeding should be dismissed because it is functus officio.

It would be easy so to dispose of the matter, but hardly just to the plaintiff. The fairer course seems to be to assume for present purposes, without so deciding, that it was the 1923 basic permit which was the subject of the revocation, labeled under a "renewal" number for convenience.

Passing to the record itself: On March 19, 1929, the Administrator served an order upon the permittee to show cause on April 10, 1929, why the permit should not be revoked, upon the following specifications:

"1. That subsequent to January 24, 1929, and during an investigation by the prohibition authorities in January and February, 1929, the plaintiff permittee destroyed and otherwise disposed of sundry and numerous sales slips which purported to account for the disposition of products manufactured from specially denatured alcohol which had been withdrawn tax free under his permit.

"2. That between January 24, 1929, and the date of the issuance of the order to show cause the plaintiff permittee unlawfully altered and changed his permit records showing the sale of products manufactured from specially denatured alcohol, with intent to conceal the unlawful diversion of the specially denatured alcohol withdrawn tax free under his permit.

"3. That the plaintiff permittee diverted to unlawful purposes the specially denatured alcohol withdrawn under his permit and falsely assumed to account for such diverted specially denatured alcohol in the manufacture of products manufactured according to formulae approved by the Prohibition Bureau, and the sale of such approved products to persons who in truth and fact did not receive them. (Appended hereto was a list of thirty-three addresses alleged to be a partial list of the fictitious and fraudulent records of sales of SDA products.)"

At the hearings so initiated, the plaintiff was ably represented by counsel, and the record presents a thorough inquiry, resulting in a carefully drawn summary of the evidence constituting the findings upon which the decision to revoke was predicated.

█ The rule as to the function of the court in reviewing such matters is clearly stated to be to ascertain if there is any evidence in the record to sustain the decision of the Administrator. Ma-King Co. v. Blair, 271 U. S. 479, 46 S. Ct. 544, 70 L. Ed. 1046, and subsequent citations.

██ The two important issues presented to the hearer were: (a) Fictitious distribution of products manufactured by plaintiff; and (b) deficiencies in his sales book records consistent with such fictitious distribution.

The testimony will not be repeated in even summary form, but suffice to state that the agents who sought to verify the list of customers furnished by the plaintiff, by personal visits to many (115) of them, testified to enough matters to put the plaintiff to his proof with respect to the identity, location, and character of purchasers at the addresses specified in the specifications; this he did not attempt. The Administrator had sufficient evidence before him to justify his conclusion that much of the plaintiff's apparent distribution of the products which he manufactures with the use of denatured alcohol cannot be verified.

The deficiencies in the sales book records are of two kinds: Absence of the 1929 sales slips recording the original transactions, most of which disappeared between January 24, 1929, when the agents first called, and February 27, 1929, the date of their second visit.

It is true that the regulations do not provide for keeping these slips; neither do they direct their destruction. If no inference is legally warranted from the disappearance of those slips between the two visits—and the plaintiff testified that he expected and relied upon a second one—the further circumstance now to be referred to supplements the incident unmistakably.

Respondent's Exhibit A is his 1929 salesbook, containing a record of each customer's purchases for the year; a complete entry comprises the customer's name, at the top of the left-hand page, and his address at the top of the right. Two pages, taken together, are devoted to each customer. Each page is 12 inches by 9¾ inches. The extreme left column on the left page is 2½ inches in width, and is headed "Date"; the two pages, taken together, are ruled vertically into 16 columns, 7 of which are on the left-hand page and 9 on the right. At the top of these columns is a space containing the name of the product, thus affording 16 columns for description of each order.

It will be perceived that the complete history of a customer's orders for one year

264

requires the use of 2 pages for each customer. Like all similar blank books, this is composed of sections, sewn and bound together. It was a 150-page book when it left the factory; now 4 left-hand leaves (8 pages) have been removed from the first section.

The plaintiff's son testified that it was so deficient when he bought it, at a reduced price on that account, in December, 1928. If that be so, when the book was first put in use, the orphan right-hand pages, which are loose, would have been preserved separately, outside of the covers, or else fastened by gum tape within, because it is obvious that, in their then condition, they could not remain in place. These four leaves, as right-hand pages, now contain addresses, and, as left-hand pages, names, dates, etc. The relation that they bear to the rest of the book has not been explained by the plaintiff, nor has his son testified to an unbroken sequence of entries which would vindicate the book as a record, so far as these detached pages are concerned.

The agents testify that, when they first examined or looked at this book, there were no loose or missing pages. This is one of five similar books, each embracing the customers on one route, and clearly the Administrator was justified in concluding that the explanation of this mutilation was not persuasive, to put the matter mildly.

The plaintiff knew the sheer necessity for keeping his sales records according to the regulations, and, if he chose to overlook the disappearance of the slips and rely upon a mutilated sales book for re-examination by the agents on their second visit, he is scarcely in a position now to urge that there is no evidence to sustain the decision of revocation.

While it is true, as has been urged in the plaintiff's brief, that the proof lies with the Administrator in a revocation proceeding, and that Congress clearly intended that there must be more than a technical violation to sustain a decision adverse to a permittee, it should be observed that this plaintiff did not suffer revocation *because* of his deficient records, but for the reason that, upon the whole case, it is clear that much of the distribution of his own products was fictitious; and that the effort to bolster up the appearance of good faith was frustrated through the deficiencies in the plaintiff's records, which have been indicated.

Decree for defendants.